**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **THE HILLSBOROUGH COUNTY AVIATION AUTHORITY, an Independent Special District of the State of Florida,** | MDL No. 2:18-mn-2873-RMG |
| | This Document Relates To: |
| **Plaintiff,** | |
| v. | **Case No.  2:20-cv-2670-RMG** |
| **THE ANSUL COMPANY, CHEMGUARD, INC., NATIONAL FOAM, INC., CHUBB FIRE, LTD., WILLIAMS FIRE & HAZARD CONTROL, and JOHN DOE DEFENDANTS 1-49,** | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| **Defendants.** | |
| _____/ | |

HILLSBOROUGH COUNTY AVIATION AUTHORITY ("Plaintiff" or "HCAA") files this Complaint against the Defendants THE ANSUL COMPANY, CHEMGUARD, INC., NATIONAL FOAM, INC., CHUBB FIRE, LTD., WILLIAMS FIRE & HAZARD CONTROL, and JOHN DOE DEFENDANTS 1-49 (collectively "Defendants"), and in support thereof alleges as follows:

## I.    SUMMARY OF THE CASE

1.      Plaintiff brings this action against Defendants to recover any and all past and future compensatory and/or consequential damages for the investigation, remediation, removal, disposal, and monitoring of the ongoing contamination of its surface, surface water, groundwater, soil, and sediment caused and/or created by Defendants' Aqueous Film Forming Foam ("AFFF") products.

2.      Plaintiff is an independent special district of the State of Florida, established by the 1945 Florida Legislature with exclusive jurisdiction, control, supervision and management over all publicly owned airports in Hillsborough County, including Tampa International Airport ("TPA"), Peter O. Knight Airport ("TPF"), Tampa Executive Airport ("TEA" f//k/a "VDF"), and Plant City Airport ("PCM") collectively ("the Airport System"). The Special Act creating HCAA specifically addresses the importance of the county's airports to Florida's economic health and tourism industry, specifically stating: "The economic validity and stability of the publicly owned or operated airports in the county is a matter of statewide importance." Under the act, the Plaintiff has the full prerogatives of a public corporation.

3.      At various times from  at least the 1960s through today, Defendants manufactured, marketed, and/or sold aqueous film-forming foam ("AFFF"), a firefighting agent used to control and extinguish flammable liquid fires, including jet-fuel fires, aviation-related fires, and hangar fires.

4.      Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), specifically, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS"), and/or perfluorononanoic acid ("PFNA") and/or perfluorohexanesulfonic acid ("PFHxS"), and/or precursors of PFAS, PFOA, PFOS, PFNA, and/or PFHxS.

5.      PFOA, PFOS, PFNA, and/or PFHxS are man-made, manufactured compounds that are toxic and persistent in the environment, do not biodegrade, move readily through soil and groundwater, and pose a significant risk to human health and safety.

6.      Defendants manufactured, marketed and/or sold AFFF with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

2

7.    At all times pertinent herein beginning decades ago and continuing to this date, AFFF containing PFOA, PFOS, PFNA, and/or PFHxS has been used and stored at the Airport System for fire protection, training, and response activities at the Airport System.

8.    During these activities, AFFF was used as directed and intended by Defendants, which allowed PFOA, PFOS, PFNA, and/or PFHxS to enter the environment. When sprayed onto outdoor surfaces as intended, these compounds migrated to surface water and through the soil and into the groundwater, thereby contaminating the Airport System.

9.    There are multiple areas on the Airport System, including land, water, and structures, that have been contaminated with PFOA, PFOS, PFNA, and/or PFHxS through the use of AFFF.

10.    The Airport System borders environmentally sensitive areas including but not limited to Tampa Bay and the Tampa Bypass Canal.

11.    The Airport System has been, and continues to be, contaminated by Defendants' PFOA, PFOS, PFNA, and/or PFHxS.

12.    At all times pertinent herein, Plaintiff did not know, nor should it have known, of the ongoing contamination of the Airport System through the use of AFFF as Defendants did not disclose the toxic nature and harmful effects of the AFFF which Defendants designed, manufactured and sold with PFOA, PFOS, PFNA, and/or PFHxS.

13.    With regard to the Defendants' tortious and wrongful conduct herein alleged, the Defendants used the U.S. mail, interstate wires, federal and state judicial systems, regulatory filings and testimony, and other vehicles to promote, conceal, protect, and continue their tortious and wrongful conduct over many, many years.

14.    Through this lawsuit, Plaintiff seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, remediate, remove, dispose of, and monitor

PFOA, PFOS, PFNA, and/or PFHxS contamination on the Airport System, surface and groundwater caused by the use of Defendants' AFFF containing PFOA, PFOS, PFNA, and/or PFHxS on the Airport System property, as well as reasonable attorney's fees as this suit was brought in the public interest.

15.     Plaintiff also seeks damages and restitution for the diminution of value of the Airport System.

## II.     PARTIES

16.     Plaintiff is an independent special district, existing under the laws of the State of Florida, with its principal address at P.O. Box 22287, Tampa, FL 33622-2287. Plaintiff owns the land upon which the Airport System operates and has overall administrative, development and operational responsibility for the Airport System.

17.     Defendant The Ansul Company ("Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143. Ansul does and/or has done business throughout the United States, including conducting business in Florida. This Defendant manufactured and sold AFFF that contained PFOA.

18.     Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin and authorized to do business in Florida, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Chemguard does and/or has done business throughout the United States, including conducting business in Florida. This Defendant manufactured and sold AFFF that contained PFOA.

19.     Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam does and/or has done business throughout the

2:20-cv-02670-RMG     Date Filed 07/17/20     Entry Number 1     Page 5 of 26

United States, including conducting business in Florida. This Defendant manufactured and sold AFFF that contained PFOA.

20.    Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc., some of which are authorized to do business in Florida. Chubb does and/or has done business throughout the United States, including conducting business in Florida. This Defendant manufactured and sold AFFF that contained PFOA.

21.    Defendant Williams Fire & Hazard Controls ("Williams"), upon information and belief, is a Texas corporation with its principal place of business at 9605 Richard Wycoff Dr, Port Arthur, Texas 77640. Upon information and belief, Williams is a subsidiary of Chemguard. Williams does and/or has done business throughout the United States, including conducting business in Florida. This Defendant manufactured and sold AFFF that contained PFOA.

22.    Upon information and belief, Defendants John Doe 1-49 were manufacturers and/or sellers of AFFF. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as additional defendants.

23.    The foregoing Defendants, including the John Doe Defendants, all were manufacturers and/or or sellers of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS who manufactured, distributed, and/or sold AFFF containing PFOA, PFOS, PFNA, and/or PFHxS that was used on the Airport System.

24.    When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally. Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.    JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction under federal diversity, pursuant to 28 U.S.C. § 1332, as the citizenship of the Plaintiff is completely diverse from the citizenship of the Defendants, and the amount-in-controversy exceeds $75,000.

26.    Plaintiff brings this civil action directly in *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, Multi-District Litigation ("MDL") No. 2873. Plaintiff files directly in this venue, the United States District Court for the District of South Carolina, Charleston Division, as allowed under the provisions of Paragraphs 25-29 of this Court's Case Management Order No. 3, dated April 26, 2019 (Doc. # 72). Plaintiff designates the United States District Court for the Middle District of Florida, Tampa Division, as its "Home Venue" under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in that District. But for this Court's Order permitting direct filing in this MDL, Plaintiff would have filed in its Home Venue.

27.    All conditions precedent to bringing this action have occurred, have been waived, or otherwise have been performed.

28.     By reason of the conduct by Defendants, described herein, Plaintiff has retained the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to seek recovery of the damages it has incurred and to institute and prosecute this action. For such employment, Plaintiff has agreed to pay its counsel their reasonable fees and costs and seeks recovery therefore to the extent authorized by applicable law or agreement.

## IV.     FACTUAL ALLEGATIONS

### A.     THE CONTAMINANTS: PFOA, PFOS, PFNA, AND/OR PFHXS

29.     PFOA, PFOS, PFNA, and/or PFHxS are chemicals within a class known as perfluoroalkyl acids ("PFAAs"). PFAAs are part of a larger chemical family known as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is why these molecules are so persistent and bioaccumulate.

30.     PFOA, PFOS, PFNA, and/or PFHxS are highly water soluble, readily transported through the air as well as the soil, surface water and groundwater, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

31.     PFOA, PFOS, PFNA, and/or PFHxS are thermally, chemically, and biologically stable in the environment and resistant to biodegradation, atmospheric photo-oxidation, direct photolysis, and hydrolysis. They are difficult and costly to remove from soil and water.

32.     PFOA, PFOS, PFNA, and/or PFHxS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found

globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

33.    PFOA, PFOS, PFNA, and/or PFHxS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

34.    Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOA, PFOS, PFNA, and/or PFHxS.

35.    According to the EPA, "...studies indicate that exposure of PFOA and PFOS over certain levels may result in...developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[3]

36.    The EPA has also warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[4]

---

[1] *See* Agency for Toxic Substances and Disease Registry, Per- and Polyfluoroalkyl Substances and Your Health, available at https://www.atsdr.cdc.gov/pfas/PFAS-health-effects.html.

[2] *See* EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 55; Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 (May 2016) at 55, both available at https://www.epa.gov/ground-water-and-drinkingwater/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[3] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available    at    https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-healthadvisories-pfoa-and-pfos.

[4] *See* "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822 R-16-002, available at    https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisoriespfoa-and-pfos.

37.     PFOA, PFOS, PFNA, and/or PFHxS are found in a number of variety of products and uses prevalent throughout our society.

38.     The EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example [...] an airfield at which [PFOA/PFOS] were used for firefighting."[5]

39.     PFOA, PFOS, PFNA, and/or PFHxS are primary components of AFFF as used for its intended purposes on the Airport System property.

**B.      THE PRODUCT: AQUEOUS FILM-FORMING FOAM**

40.     AFFF is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

41.     The Federal Aviation Administration (FAA) has required and currently requires the use of AFFF at TPA as part of its emergency response to control and extinguish flammable liquid fires, including jet-fuel fires, aviation-related fires, and hangar fires. The FAA further requires testing and training concerning the use of AFFF in emergency situations.

42.     The Fire Marshall has required and currently requires the use of AFFF at TPA and VDF as part of the fire prevention systems in various hangars.  The Fire Marshall further requires testing and training concerning the use of AFFF in emergency situations.

43.     The AFFF made by Defendants contained PFOA, PFOS, PFNA, and/or PFHxS.

---

[5] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-healthadvisories- pfoa-and-pfos.

44.     AFFF can be made without PFOA, PFOS, PFNA, and/or PFHxS. Fluorine-free foams do not release PFOA, PFOS, PFNA, and/or PFHxS into the environment. Despite knowledge of this fact, as well as knowledge of the toxic nature of AFFF made with PFOA, PFOS, PFNA, and/or PFHxS, Defendants continued to manufacture, distribute and/or sell AFFF with PFOA, PFOS, PFNA, and/or PFHxS, which led to the ongoing contamination and damages to the Airport System property.

45.     AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

46.     The Plaintiff utilized the product as intended and directed and maintained appropriate safeguards as to their personnel while treating any emergency at the Airport System, participating in any training or performing any FAA Part 139 testing at the Airport System.

47.     When used as the Defendants intended and directed, the AFFF sold to and utilized at the Airport System released PFOA, PFOS, PFNA, and/or PFHxS into the environment.

48.     Once PFOA, PFOS, PFNA, and/or PFHxS are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

49.     Defendants' AFFF containing PFOA, PFOS, PFNA, and/or PFHxS has been used for its intended purpose, with appropriate known safeguards, in the process of fire protection, training, and response activities at the Airport System for many years. During these activities, AFFF was used as directed and intended by the manufacturer, with all known safeguards, which allowed PFOA, PFOS, PFNA, and/or PFHxS to enter into and onto the Airport System property where these compounds migrated to surface water and through the subsurface into the

groundwater, thereby contaminating the surface, soil, sediment as well as surface and groundwater, thus causing other extensive and ongoing damages at the Airport System.

50.     Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to, cause injury and damage to the Airport System property.

### C.     DEFENDANTS' HISTORY OF MANUFACTURING AND SELLING AFFF

51.     National Foam and Ansul began to manufacture, market, and sell AFFF in the 1970s.

52.     Chemguard began to manufacture, market, and sell AFFF in the 1990s.

53.     Upon information and belief, throughout the 1990s, Chubb, through its association with National Foam, obtained patents under the name Chubb National Form, Inc. for AFFF and similar firefighting foams, including Patent No. 5207932, dated May 4, 1993, for alcohol resistant AFFF.

54.     In a memo explaining its decision, the EPA stated that PFOS "appears to combine Persistence, Bioaccumulation, and Toxicity property to an extraordinary degree."

55.     The Defendants knew their customers warehoused large stockpiles of AFFF and touted the shelf-life of AFFF.

56.     While Defendants phased out production or transitioned to new formulas of AFFF in response to pressure from the United States Environmental Protection Agency ("EPA"), they did not instruct users of AFFF that they should not use AFFF that contained PFOS, PFOA, PFNA and/or PFHxS, and/or their precursors.

57.     Defendants further did not act to remove AFFF from the stream of commerce.

58.     Defendants did not warn public entities or others that AFFF would harm the environment, endanger human health, or cause them to incur substantial costs to investigate and clean up contamination of groundwater and other natural resources and to dispose of AFFF.

59.     Accordingly, for many years after the original sale of AFFF, Plaintiff was using the AFFF products over the years, with appropriate safeguards, in various fire-fighting methods, which resulted in AFFF products being discharged into impervious and pervious surfaces, floor drains and washed into sediments, soils and waters, harming the environment and endangering human health.

60.     Defendants did not properly instruct users, consumers, public officials or those who were in a position to properly guard against the dangers of PFAS how to properly dispose of AFFF or that they needed to properly dispose of their stockpiles of AFFF.

### D.     THE DEFENDANTS' KNOWLEDGE OF PFAS HAZARDS

61.     On information and belief, by the 1950s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOS, PFOA, PFNA and/or PFHxS are toxic and bioaccumulate in humans and animals; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOS, PFOA, PFNA and/or PFHxS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.   In addition, PFOS, PFOA, PFNA and/or PFHxS are considered surface water body pollutants/contaminants.

62.     At all times pertinent herein, Defendants also knew or should have known that PFOS, PFOA, PFNA and/or PFHxS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOS, PFOA, PFNA and/or PFHxS are known carcinogens that cause genetic damage.

63.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

64.    Notwithstanding their respective knowledge of the dangers of AFFF made with PFOA, PFOS, PFNA, and/or PFHxS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold AFFF containing PFOA, PFOS, PFNA, and/or PFHxS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil), thus improperly permitting PFOA, PFOS, PFNA, and/or PFHxS to contaminate the soil and groundwater in and around the Airport System; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA, PFOS, PFNA, and/or PFHxS.

65.    As a direct result of Defendants' acts alleged in this Complaint, the Airport System property has been contaminated and will continue to be contaminated with PFOA, PFOS, PFNA, and/or PFHxS, creating an environmental and public health hazard, unless such contamination is remediated. Regardless, as a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA, PFOS, PFNA, and/or PFHxS contamination on the Airport System property at significant expense, loss and damage.

66.    Defendants had and breached their duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products. They also had

and breached their duty to minimize the environmental harm caused by PFOA, PFOS, PFNA, and/or PFHxS. Moreover, defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from using AFFF with PFOA, PFOS, PFNA, and/or PFHxS in its intended manner for its intended purpose.

### E.     THE IMPACT OF PFOA AND PFOS ON PLAINTIFF'S PROPERTY

67.     Since before 1950, the TPA has been used as an airport. As a brief history, in 1928 160-acre Drew Field was opened six miles west of Downtown Tampa. In 1940 and prior to World War II, the City of Tampa leased Drew Field to the U.S. Government for 25 years, or until the end of the "national emergency." During the war, the airfield was used by the Army Air Force and renamed Drew Army Airfield. After World War II, the Army Air Forces vacated the facility and Drew Field was returned to the City of Tampa. The Hillsborough County Aviation Authority was established by the 1945 Florida Legislature with exclusive jurisdiction, control, supervision and management over all publicly owned airports in Hillsborough County. In 1950, international flights began, and Drew Field was renamed Tampa International Airport. TPA's second terminal opened in 1952. TPA's current terminal complex opened in 1971.

68.     TPF was opened in approximately 1936. Plaintiff purchased TPF in September 1999 from the City of Tampa. TPF is located in the City of Tampa on Davis Islands and borders Tampa Bay.

69.     In the 1950s, George Vandenberghe began developing the land where TEA is currently located. Between 1978 and 2007, Plaintiff acquired property that now makes up TEA. Starting in 1985, Plaintiff initiated an expansion which included the construction of Runway 05/23, a new terminal building and new operations facilities. The airport name changed from Vandenberg Airport (VDF) to TEA in 2009. TEA is located near the I-4/I-75 corridor and is adjacent to the Tampa Bypass Canal.

70.    PCM was purchased in 1983 by the Plaintiff from the City of Plant City. PCM is comprised of approximately 200 acres located in eastern Hillsborough County, near Interstate 4. During the nearly eighty years of operation, there have been multiple incidents at the Airport System whereby the need for emergency response and use of AFFF has been necessary. Further, certain testing has been performed at the Airport System at the direction of both the FAA and the state.

71.    PFOA, PFOS, PFNA, and/or PFHxS are present in certain areas of TPA, TPF, TEA, and PCM. Any detectible level of PFOA, PFOS, PFNA, and/or PFHxS in the TPA's soil, surface water, groundwater, well water, or elsewhere on its property requires further investigation, monitoring and ultimately remediation. The threat of detection and/or presence of PFOA, PFOS, PFNA, and/or PFHxS, at the Airport System property has resulted, and will continue to result, in significant damage to Plaintiff.

72.    The invasion of the Airport System property at TPA, TPF, TEA, and PCM.  with PFOA, PFOS, PFNA, and/or PFHxS continues – contamination flows continue on the Airport and PFOA, PFOS, PFNA, and/or PFHxS continue to pollute or contaminate the Airport System property, resulting in new harm to the Airport System property at TPA and Plaintiff on each occasion.

73.    The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the Airport System property. Plaintiff's interests in protecting the Airport System property constitute a reason for seeking damages sufficient to restore such property to its pre-contamination condition.

## FIRST CAUSE OF ACTION

### STRICT LIABILITY – DEFECTIVE DESIGN

74.     Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

75.     Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and selling products containing PFOA, PFOS, PFNA, and/or PFHxS.

76.     Defendants marketed and sold AFFF containing PFOA, PFOS, PFNA, and/or PFHxS for use in controlling and extinguishing aviation, marine, fuel and other flammable liquid fuel fires.

77.     Defendants represented, asserted, claimed, and warranted that their AFFF products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

78.     As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous for its intended and foreseeable uses.

79.     The AFFF containing PFOA, PFOS, PFNA, and/or PFHxS used on the Airport System property were used in a reasonably foreseeable manner and without substantial change in the condition in which the products were sold.

80.     Defendants knew, or should have known, that use of AFFF in its intended manner or in a manner reasonably foreseeable by Defendants would result in the spillage, discharge, disposal, or release of PFOA, PFOS, PFNA, and/or PFHxS into or onto land with associated migration to groundwater.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

### SECOND CAUSE OF ACTION

STRICT LIABILITY – FAILURE TO WARN

81.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

82.    As manufacturers, distributors, suppliers, sellers, and marketers of products containing PFOA, PFOS, PFNA, and/or PFHxS, Defendants had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by PFOA, PFOS, PFNA, and/or PFHxS.

83.    Defendants knew that PFOA, PFOS, PFNA, and/or PFHxS would be purchased, transported, stored, handled, and used without notice of the hazards that PFOA, PFOS, PFNA, and/or PFHxS pose to human health and the environment.

84.    Defendants breached their duty to warn by unreasonably failing to provide Plaintiff, public officials, downstream handlers, and/or the general public with warnings about the potential and/or actual contamination of the environment by PFOA, PFOS, PFNA, and/or PFHxS, despite Defendants' knowledge that PFOA, PFOS, PFNA, and/or PFHxS were real and potential threats to the environment. Therefore, Defendants failed to adequately warn of a risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

85.    AFFF containing PFOA, PFOS, PFNA, and/or PFHxS purchased or otherwise acquired from Defendants was used, discharged, and/or released into or onto the Airport System property.

86.    AFFF containing PFOA, PFOS, PFNA, and/or PFHxS was used in a reasonably foreseeable manner and without substantial change in the condition in which the product was sold.

87.     AFFF containing PFOA, PFOS, PFNA, and/or PFHxS used on the Airport System property was defective in design and unreasonably dangerous for the reasons set forth above.

88.     Despite the known and/or foreseeable environmental and human health hazards associated with the use and/or disposal of PFOA, PFOS, PFNA, and/or PFHxS on the Airport System property, including contamination of the soil, surface water and groundwater with PFOA, PFOS, PFNA, and/or PFHxS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

89.     In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their PFOA, PFOS, PFNA, and/or PFHxS.

90.     As a direct and proximate result of Defendants' above-described failure to give warnings, PFOA, PFOS, PFNA, and/or PFHxS have: (a) posed and continue to pose a threat to the Airport System property; (b) contaminated and continue to contaminate the Airport System property; (c) required and/or will continue to require the investigation and monitoring of the soil and groundwater for PFOA, PFOS, PFNA, and/or PFHxS contamination; and (d) will require remediation of PFOA, PFOS, PFNA, and/or PFHxS contamination or, where remediation is impracticable, removal and disposal of the contaminated property.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

### THIRD CAUSE OF ACTION

STRICT LIABILITY – DAMAGES UNDER SECTION 376.313, FLORIDA STATUTES

91.     Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

92.    Defendants' acts and omissions set forth above caused a prohibited discharge of the pollutants or hazardous substances PFOA, PFOS, PFNA, and/or PFHxS onto the Airport System property.

93.    The contamination created by Defendants' actions requires clean up and/or removal of the PFOA, PFOS, PFNA, and/or PFHxS from the Airport System property.

94.    Plaintiff has been damaged as a direct and proximate result of the acts and omissions of Defendants as set forth above.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## FOURTH CAUSE OF ACTION

### TRESPASS

95.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

96.    Plaintiff is the owner and/or actual possessor and/or assignee of rights of the Airport System property and right to access the ground water and other relevant structures located thereon. Defendants knew, or in the exercise of reasonable care should have known, that PFOA, PFOS, PFNA, and/or PFHxS contaminates soil, surface, and groundwater, including the property and other rights of Plaintiff.

97.    Defendants failed to properly warn against the use of AFFF such that they proximately caused and continue to cause PFOA, PFOS, PFNA, and/or PFHxS to contaminate the Airport System property, including but not limited to its soil, surface, groundwater, and other structures located thereon.

98.    The contamination of the Airport System property has varied over time and has not yet ceased. PFOA, PFOS, PFNA, and/or PFHxS continue to pollute and contaminate the Airport System property.

99.     Plaintiff has not consented to, and does not consent to, this contamination.

100.    Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass, and that they had no right or authority to carry out this trespass.

101.    As a direct and proximate result of the trespass, the Airport System property has been damaged and Plaintiff is entitled to abate the trespass and other damages including, but not limited to, diminution in property value, loss of use and enjoyment, cost of bringing the Airport System property to its original condition, investigation, remediation, treatment, and/or to such other appropriate relief.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

102.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

103.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and/or handlers of PFOA, PFOS, PFNA, and/or PFHxS products, Defendants owed a duty to Plaintiff, as well as to all persons whom Defendants' products might foreseeably harm, to exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of PFOA, PFOS, PFNA, and/or PFHxS products.

104.    Despite the fact that Defendants knew that PFOA, PFOS, PFNA, and/or PFHxS are toxic, can contaminate soil and water resources, and present significant risks to human health, Defendants negligently breached their duty of care when they: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold products containing PFOA, PFOS, PFNA, and/or PFHxS; (b) issued instructions on how AFFF containing PFOA, PFOS, PFNA, and/or PFHxS should be used and disposed of, thus improperly permitting

20

PFOA, PFOS, PFNA, and/or PFHxS to enter and contaminate the Airport System property; (c) failed to recall and/or warn the users of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS of the dangers of soil and groundwater contamination as a result of standard use and disposal of this product; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF.

105.    As a direct and proximate result of Defendants' acts and omissions as set forth above, the Airport System property has been, and continues to be, contaminated with PFOA, PFOS, PFNA, and/or PFHxS, causing Plaintiff significant injury and damage. Furthermore, as a direct and proximate result of Defendants' aforementioned acts and omissions, Plaintiff has incurred, is incurring, and will continue to incur significant costs and damages resulting from and associated with the contamination of the Airport System by Defendants' AFFF made with PFOA, PFOS, PFNA, and/or PFHxS.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## SIXTH CAUSE OF ACTION

### CIVIL CONSPIRACY

106.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

107.    At all times relevant to this lawsuit, Defendants actually knew of the hazards that PFOA and PFOS posed to the environment, including the Airport System property.

108.    Beginning in the 1960s and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to the Plaintiff. Each Defendant performed at least one overt act in furtherance of this conspiracy.

Specifically, Defendants colluded for the avowed purpose of providing information about AFFF products containing PFOA, PFOS, PFNA, and/or PFHxS to the public and the government, with the true, unlawful purpose of:

    a) intentionally misrepresenting to the EPA and the public that AFFF containing PFOA, PFOS, PFNA, and/or PFHxS was safe and did not pose a risk to human health and the environment;

    b) concealing the dangers of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS, including the products' characteristics and their propensity to contaminate soil and groundwater, from the government and public by, among other means, repeatedly misrepresenting how products containing PFOA, PFOS, PFNA, and/or PFHxS were being disposed of;

    c) concealing the dangers of PFOA, PFOS, PFNA, and/or PFHxS from consumers and the public; and

    d) using their considerable resources to fight legislation concerning PFOA, PFOS, PFNA, and/or PFHxS.

109. As a direct and proximate result of Defendants' conspiracy, Defendants' AFFF products at all times relevant to this litigation have:

    a) posed and continue to pose a threat to the Airport System property;

    b) contaminated and/or will continue to contaminate the Airport System property;

    c) contaminated and/or will continue to contaminate the soil, surface and groundwater on and within the vicinity of the Airport System property;

    d) required or will require testing and monitoring of the Airport System property for PFOA, PFOS, PFNA, and/or PFHxS contamination;

e) required or will require remediation of PFOA, PFOS, PFNA, and/or PFHxS contamination or, where remediation is impracticable or insufficient for Plaintiff, removal and disposal of the contamination;

f) diminished Plaintiff's confidence in, and the use and enjoyment of the Airport System property;

g) diminished the Airport System property's value due to actual, impending, and/or threatened PFOA, PFOS, PFNA, and/or PFHxS contamination; and

h) caused and/or will cause Plaintiff to sustain substantially increased damages and expenses resulting from the loss of the safety, use, benefit and/or enjoyment of the Airport System property .

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## SEVENTH CAUSE OF ACTION

### PUBLIC NUISANCE

110.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

111.    Defendants manufactured, distributed, marketed, and/or promoted their products containing PFOA, PFOS, PFNA, and/or PFHxS in a manner that created, or participated in creating, a public nuisance that unreasonably endangers or injures the property, health, safety, and comfort of the general public and Plaintiff, causing inconvenience, damage, and annoyance.

112.    Defendants, by their acts and omissions set forth above, have, among other things, knowingly unleashed long-lasting and still spreading PFOA, PFOS, PFNA, and/or PFHxS contamination and threat of contamination to the environment and the Airport System property.

113.    Actual and threatened PFOA, PFOS, PFNA, and/or PFHxS contamination caused by Defendants' conduct has caused, and continues to cause, injury to Plaintiff in the form of present

and serious interference with the use, benefit, and/or enjoyment of its property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

114.    Defendants' conduct has also injured, and continues to injure, the property, health, safety, and/or comfort of a considerable number of persons, including a considerable number of persons in Tampa, Florida, who utilize and/or work at the Airport System.

115.    PFOA, PFOS, PFNA, and/or PFHxS contamination constitute current, as well as prospective, public nuisances.

116.    Plaintiff suffered a special or particular injury different in degree and in kind from the injury or damages suffered by the public.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

<u>**EIGHTH CAUSE OF ACTION**</u>

PRIVATE NUISANCE

117.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

118.    The Airport System property has been contaminated by PFOA, PFOS, PFNA, and/or PFHxS as a direct and proximate result of the acts and omissions of Defendants as set forth above.

119.    PFOA, PFOS, PFNA, and/or PFHxS contamination caused by Defendants' conduct has damaged the Airport System property and interfered with the free use, possession, or enjoyment of the Airport System property, and rendered its ordinary use or occupation physically uncomfortable.

120.    Defendants' conduct has interfered and continues to interfere with Plaintiff's property rights, comfort, and/or safety.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1. Compensatory damages, including, but not limited to:

   a) costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFOA, PFOS, PFNA, and/or PFHxS contamination on and within the Airport System property;

   b) costs and expenses related to the past, present, and future treatment and remediation of PFOA, PFOS, PFNA, and/or PFHxS contamination of the Airport System property or, in the alternative, the costs and expenses associated with and related to the removal and disposal of the contamination; and

   c) costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFOA, PFOS, PFNA, and/or PFHxS on and within the Airport System property, or to mitigate further impact.

2. Consequential damages, including costs and expenses related to replacing Plaintiff's firefighting equipment which has been contaminated;

3. A determination that this suit was brought in the public interest;

4. Reasonable Attorney's Fees under section 376.313, Florida Statute;

5. Costs and disbursements of this lawsuit;

6. Pre-judgment and post-judgment interest; and

7. Any other and further relief as the Court deems just, proper, and equitable.

8. Plaintiff reserves its right to amend the Complaint to demand punitive damages.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: July 17, 2020

Respectfully submitted,

**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**

*/s/ Ralph A. DeMeo*
**RALPH A. DEMEO**
Florida Bar No. 0471763
Primary E-mail: rdemeo@bakerdonelson.com
Secondary E-mail: calford@bakerdonelson.com
Secondary E-mail: jwarmack@bakerdonelson.com
**LAUREN D. BROOKS**
Florida Bar No. 0104847
Primary E-mail: lbrooks@bakerdonelson.com
Secondary E-mail: calford@bakerdonelson.com
Monroe Park Tower
101 North Monroe Street, Suite 925
Tallahassee, FL 32301
P: (850) 425-7500
F: (850) 270-6706

and

**MICHAEL KAMPRATH**
Florida Bar No. 14429
Alabama Bar No. 3954M76K
Primary email: mkamprath@tampaairport.com
Secondary email: jwood@tampaairport.com
**The Hillsborough County Aviation Authority**
P.O. Box 22287
Tampa FL 33622
P: (813) 870-7833
F: (813) 554-1404

*Attorneys for Plaintiff, The Hillsborough County Aviation Authority*